644 S.E.2d 663

Sherry H. SIMPSON, Respondent,

v.

MSA OF MYRTLE BEACH, INC. d/b/a Addy's Harbor Dodge, Daimler Chrysler Services NA, LLC, and CrossCheck, Inc., Defendants,

of whom MSA of Myrtle Beach, Inc. d/b/a Addy's Harbor Dodge, is the Appellant.

No. 26293.

Supreme Court of South Carolina.

Heard Nov. 1, 2006.

Decided March 26, 2007.

Rehearing Denied May 23, 2007.

18

Joseph Gregory Studemeyer, of Columbia, for Appellant.

Lawrence Sidney Connor, IV, of Kelaher, Connell & Connor, of Surfside Beach, for Respondent.

Chief Justice TOAL:

This case arises out of an arbitration clause in an automobile trade-in contract between an automobile dealership and a customer. The automobile dealership filed a motion for protective order and/or to stay and to compel arbitration in response to the customer's civil action. The trial court denied the dealership's motion on the grounds that the arbitration clause was unconscionable. This appeal followed.

### FACTUAL/PROCEDURAL BACKGROUND

Appellant MSA of Myrtle Beach, Inc d/b/a Addy's Harbor Dodge ("Addy"), a car dealership, and Respondent Sherry H. Simpson ("Simpson") entered into a contract whereby Simpson traded in her 2001 Toyota 4Runner for a new 2004 Dodge Caravan. Directly above the signature line on the first page of the contract, the signee was instructed in bold to "SEE ADDITIONAL TERMS AND CONDITIONS ON OPPOSITE PAGE." The additional terms and conditions contained an arbitration clause stating the following:

10. *ARBITRATION* Any and all disputes, claims or controversies between Dealer and Customer or between any

officers, directors, agents, employees, or assignees of Dealer and Customer arising out of or relating to: (a) automobile warranty, workmanship, or repair; (b) the terms or enforceability of the sale, lease, or financing of any vehicle; (c) any claim of breach of contract, misrepresentation, conversion, fraud, or unfair and deceptive trade practices against Dealer or any officers, directors, agents, employees, or assignees of Dealer; (d) any and all claims under any consumer protection statute; and (e) the validity and scope of this contract, shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The parties expressly waive all rights to trial by jury on such claims. Provided, however, that nothing in this contract shall require Dealer to submit to arbitration any claims by Dealer against customer for claim and delivery, repossession, injunctive relief, or monies owed by customer in connection with the purchase or lease of any vehicle and any claims by Dealer for these remedies shall not be stayed pending the outcome of arbitration. The filing fees for arbitration shall be paid by the party initiating arbitration. The arbitrator may allocate the other arbitration fees as he/she deems appropriate. In addition to any discovery permitted by the Commercial Arbitration rules, any party may take one disposition [sic] of an opposing party. The parties agree to exchange all exhibits to be used in arbitration 7 days before arbitration. The arbitrator shall determine the controversy in accordance with the terms of this contract between the parties and shall not consider any parole evidence which purports to alter, modify, vary, add to, or contradict such contract. The arbitrator shall give effect to all applicable statutes of limitation. Any arbitration under this agreement shall take place in Horry County, South Carolina and Customer agrees that the courts of Horry County, South Carolina shall have exclusive jurisdiction over enforcement of this contract and any award made by any arbitrator pursuant to this contract. In no event shall the arbitrator be authorized to award punitive, exemplary, double, or treble damages (or any other damages which are punitive in nature or effect) against either party. Unless otherwise agreed in writing, no claims

against Dealer shall be consolidated with other claims in the nature of a class action.

Six months later, Simpson filed a complaint in the Horry County court of common pleas alleging Addy violated the South Carolina Unfair Trade Practices Act and the South Carolina Manufacturers, Distributors, and Dealers Act by misrepresenting the trade-in value of the vehicle, artificially increasing the purchase price, and failing to provide all rebates promised. Simpson sought damages consistent with the maximum statutory remedies permitted for violations of these statutes.

Addy's answer denied Simpson's allegations and asserted that the contract between the parties contained an arbitration clause such that the matter should be stayed and that Simpson's only remedy was to file for arbitration. Addy contemporaneously filed a motion for protective order and/or to stay and compel arbitration. Thereafter, Simpson filed a memorandum in opposition to Addy's motion alleging that the arbitration clause was unconscionable and unenforceable.

At the motion hearing, the trial court ordered the parties to attempt mediation. After the parties notified the trial court that mediation failed, the trial court issued an order denying Addy's motion on the grounds that the arbitration clause was unconscionable. Addy filed this appeal.

The case was certified to this Court from the court of appeals pursuant to Rule 204(b), SCACR, and Addy raises the following issues for review:

I. Did the lower court err in ruling that the arbitration clause was unenforceable without first submitting the issue of enforceability to arbitration?

II. Did the lower court err in denying Addy's motion to stay the civil litigation pending arbitration?

III. Did the lower court err in failing to provide Addy a reasonable opportunity to present evidence as to the commercial setting, purpose, and effect of the arbitration clause in order to aid the court in making a determination on unconscionability?

## STANDARD OF REVIEW

■ Arbitrability determinations are subject to *de novo* review. *Wellman, Inc. v. Square D Co.*, 366 S.C. 61, 67, 620 S.E.2d 86, 89 (Ct.App.2005). Nevertheless, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings. *Thornton v. Trident Med. Ctr., L.L.C.*, 357 S.C. 91, 94, 592 S.E.2d 50, 51 (Ct.App.2003).

## LAW/ANALYSIS

### I. The appropriate forum for determining the validity of the arbitration clause.

■ As a preliminary matter, Addy contends that the trial court erred in ruling on the arbitration clause's enforceability rather than first submitting that issue of enforceability to arbitration. We disagree.

■ The South Carolina Uniform Arbitration Act (UAA) generally provides that where one party denies the existence of an arbitration agreement raised by an opposing party, a court must immediately determine whether the agreement exists in the first place. S.C.Code Ann. § 15–48–20(a)(2005). If no agreement is found to exist, the court must deny any application to arbitrate.[1] *Id.*

---

1. The Federal Arbitration Act (FAA), 9 U.S.C.A. § 1 *et. seq.* (1999) codifies federal policy on arbitration and arbitration agreements. Unless the parties have contracted otherwise, the FAA applies in federal and state courts to any arbitration agreement regarding a transaction that involves interstate commerce, regardless of whether the parties contemplated an interstate transaction. *Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 538, 542 S.E.2d 360, 363 (2001). Although the vehicle trade-in contract at issue in the instant case involves interstate commerce, the contract contains a choice of law provision designating South Carolina law as governing law. Therefore, the UAA governs where, as here, the validity of the choice of law provision is not in issue. Additionally, FAA pre-emption of the UAA is not an issue in this case because the state laws applicable to this case do not operate to completely invalidate the parties' agreement to arbitrate. *See Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 592, 553 S.E.2d 110, 116 (2001).

This distinction is insignificant in the instant case because the UAA and FAA provisions that apply to the issues are nearly identical. *See* S.C.Code Ann. § 15–48–10(a) (2005) and 9 U.S.C.A. § 2 (1999). Therefore, the analysis under state law is ultimately the same as the analysis under federal law. Moreover, even in cases where the FAA otherwise applies, general contract principles of state law apply in a court's

■ Our precedents in this area echo the UAA's policy that the trial court should determine the threshold validity of the arbitration agreement. *See Zabinski*, 346 S.C. at 596, 553 S.E.2d at 118 ("The question of the arbitrability of a claim is an issue for judicial determination, unless the parties provide otherwise."); *Hous. Auth. of the City of Columbia v. Cornerstone Hous., LLC*, 356 S.C. 328, 334, 588 S.E.2d 617, 620 (Ct.App.2003) ("The initial inquiry to be made by the trial court is whether an arbitration agreement exists between the parties."). Such rulings are based on the contractual nature of arbitration agreements. *See Towles v. United Healthcare Corp.*, 338 S.C. 29, 37, 524 S.E.2d 839, 843–44 (Ct.App.1999) ("Arbitration is available only when the parties involved contractually agreed to arbitrate.").

This proposition finds support in other jurisprudence. The United States Supreme Court has noted that, in limited circumstances, a court should assume that the parties intended the court to decide certain arbitration issues in the absence of "clear and unmistakable" evidence to the contrary. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). These limited circumstances typically involve certain "gateway matters," such as whether the parties have a valid arbitration agreement at all, or whether an arbitration clause applies to a certain type of controversy. *Id.* Thus, the prevailing authority supports the notion that courts may have at least a limited role where an arbitration clause otherwise applies.

In this case, the trial court was the proper forum for determining the enforceability of the arbitration clause in the contract between Simpson and Addy. Although the clause specifically stated that arbitration applied to issues involving "the validity and scope of this contract," Simpson challenged the validity of the arbitration provision on grounds of unconscionability, bringing into question whether an arbitration agreement even existed in the first place. Under the UAA,

evaluation of the enforceability of an arbitration clause. *Munoz*, 343 S.C. at 539, 542 S.E.2d at 364.

the question of this clause's validity was for the court to decide. *See* S.C.Code Ann. § 15–48–20(a) (2005).

Furthermore, because Simpson has challenged the validity of the entire arbitration clause on grounds of unconscionability, there can be no "clear and unmistakable" evidence that the parties actually agreed to arbitrate the gateway matter of the arbitration clause's validity. Accordingly, the trial court did not err in ruling on the issue of validity instead of submitting the issue itself to arbitration.

## II. Denial of Addy's motion for protective order and/or to stay and compel arbitration.

Addy argues that the trial court erred in denying Addy's motion for protective order and/or to stay and compel arbitration. We disagree.

 There is a strong presumption in favor of the validity of arbitration agreements because both state and federal policy favor arbitration of disputes. *Towles*, 338 S.C. at 34, 524 S.E.2d at 842. The South Carolina Uniform Arbitration Act (UAA) provides that in any contract evidencing a transaction involving commerce, a written provision to settle by arbitration shall be valid, irrevocable, and enforceable. S.C.Code Ann. § 15–48–10(a) (2005). Unless a court can say with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the dispute, arbitration should generally be ordered. *Zabinski*, 346 S.C. at 597, 553 S.E.2d at 118.

 Despite these clear rules, arbitration is a matter of contract law and is available only when the parties involved contractually agreed to arbitrate. *Towles*, 338 S.C. at 37, 524 S.E.2d at 843–44. Accordingly, a party may seek revocation of the contract under "such grounds as exist at law or in equity," including fraud, duress, and unconscionability. S.C.Code Ann. § 15–48–10(a). Arbitration will be denied if a court determines no agreement to arbitrate existed. S.C.Code Ann. § 15–48–20(a).

 General contract principles of state law apply in a court's evaluation of the enforceability of an arbitration clause. *Munoz*, 343 S.C. at 539, 542 S.E.2d at 364. In South Carolina,

unconscionability is defined as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them. *Carolina Care Plan, Inc. v. United HealthCare Servs., Inc.,* 361 S.C. 544, 554, 606 S.E.2d 752, 757 (2004). If a court as a matter of law finds any clause of a contract to have been unconscionable at the time it was made, the court may refuse to enforce the unconscionable clause, or so limit its application so as to avoid any unconscionable result. S.C.Code Ann. § 36–2–302(1) (2003).

In analyzing claims of unconscionability in the context of arbitration agreements, the Fourth Circuit has instructed courts to focus generally on whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker. *See Hooters of Am., Inc. v. Phillips,* 173 F.3d 933, 938 (4th Cir.1999). It is under this general rubric that we determine whether a contract provision is unconscionable due to both an absence of meaningful choice and oppressive, one-sided terms.

## A. Absence of meaningful choice

Addy argues that the facts do not show that Simpson had no meaningful choice in agreeing to arbitrate. We disagree.

Absence of meaningful choice on the part of one party generally speaks to the fundamental fairness of the bargaining process in the contract at issue. *See Carlson v. General Motors Corp.,* 883 F.2d 287, 295 (4th Cir.1989). In determining whether a contract was "tainted by an absence of meaningful choice," *id.* at 295, courts should take into account the nature of the injuries suffered by the plaintiff; whether the plaintiff is a substantial business concern; the relative disparity in the parties' bargaining power; the parties' relative sophistication; whether there is an element of surprise in the inclusion of the challenged clause; and the conspicuousness of the clause. *Id.* at 293. *See also Holler v. Holler,* 364 S.C. 256, 269, 612 S.E.2d 469, 476 (Ct.App.2005) ("A determination whether a contract is unconscionable depends upon all the facts and circumstances of a particular case." (quoting 17A AM.JUR.2D *Contracts* § 279 (2004))).

There are many cases in this jurisdiction and others involving the enforceability of arbitration clauses in adhesion contracts between commercial entities and consumers. Each transaction is analyzed on its own particular facts in conjunction with the federal and/or state policies favoring arbitration. We begin our inquiry with a focus on the decisions of courts in Ohio, which have heard numerous cases in the very recent past specifically addressing issues of unconscionability of arbitration clauses embedded in adhesion contracts between automobile retailers and consumers. *See Long v. N. Ill. Classic Auto Brokers*, 2006 WL 3783507 (Ohio Ct.App. 9th Dist.2006); *Felix v. Ganley Chevrolet, Inc.*, 2006 WL 2507469 (Ohio Ct. App. 8th Dist.2006), *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 809 N.E.2d 1161 (9th Dist.2004); *Battle v. Bill Swad Chevrolet, Inc.*, 140 Ohio App.3d 185, 746 N.E.2d 1167 (10th Dist.2000).

The Ohio courts characterize automobiles as a "necessity" and factor this characterization into a determination of whether a consumer had a "meaningful choice" in negotiating the arbitration agreement. *See, e.g., Eagle*, 809 N.E.2d at 1175; *Cf. Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A.2d 69, 85 (1960) (invalidating auto manufacturer's standard-form disclaimers of implied warranties because such disclaimers frustrated consumer protection legislation given that in modern times, "automobiles are a common and necessary adjunct of daily life"). In this same context, the Ohio courts have adhered to the idea that sales agreements between consumers and retailers "are subject to considerable skepticism upon review, due to the disparity in bargaining positions of the parties." *Eagle*, 809 N.E.2d at 1179. Under the Ohio courts' rationale, "the presumption in favor of arbitration clauses is substantially weaker when there are strong indications that the contract at issue is an adhesion contract, and the arbitration clause itself appears to be adhesive in nature. In this situation there arises considerable doubt that any true agreement ever existed to submit disputes to arbitration." *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 700 N.E.2d 859, 866 (1998).

Turning to the instant case, we first note that under general principles of state contract law, an adhesion contract is a standard form contract offered on a "take-it-or-

leave-it" basis with terms that are not negotiable. *Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 541, 542 S.E.2d 360, 365 (2001). Neither party disputes that the contract entered into by Simpson and Addy was an adhesion contract as such contracts are standard in the automobile retail industry. Adhesion contracts, however, are not per se unconscionable. Therefore, finding an adhesion contract is merely the beginning point of the analysis. *Lackey v. Green Tree Fin. Corp.*, 330 S.C. 388, 395, 498 S.E.2d 898, 902 (Ct.App.1998).

We agree with the rationale of the Ohio courts and proceed to analyze this contract between a consumer and automobile retailer with "considerable skepticism." Under this approach, we first observe that the contract between Simpson and Addy involved a vehicle intended for use as Simpson's primary transportation, which is critically important in modern day society. Applying the factors considered by the Fourth Circuit in analyzing arbitration clauses, we also acknowledge Simpson's claim that she did not possess the business judgment necessary to make her aware of the implications of the arbitration agreement, and that she did not have a lawyer present to provide any assistance in the matter. *But see Munoz*, 343 S.C. 531, 542 S.E.2d 360 (failing to factor in the weaker party's status as a consumer in analyzing an unconscionability claim in an arbitration agreement between a consumer and a lender). Similarly, we note Simpson's allegation that the contract was "hastily" presented for her signature.

Moreover, regardless of the general legal presumptions that a party to a contract has read and understood the contract's terms,[2] we also find it necessary to consider the otherwise inconspicuous nature of the arbitration clause in light of its consequences. The loss of the right to a jury trial is an obvious result of arbitration. However, this particular arbitration clause also required Simpson to forego certain remedies that were otherwise required by statute.[3] While certain

---

**2.** *See Munoz*, 343 S.C. at 541, 542 S.E.2d at 365 ("[A] person who can read is bound to read an agreement before signing it."); *Towles*, 338 S.C. at 39, 524 S.E.2d at 845 ("[T]he law does not impose a duty to explain a document's contents to an individual when the individual can learn the contents simply from reading the document.").

**3.** Specifically, the arbitration clause prohibited an arbitrator from awarding double or treble damages.

phrases within other provisions of the additional terms and conditions were printed in all capital letters,[4] the arbitration clause in its entirety was written in the standard small print, and embedded in paragraph ten (10) of sixteen (16) total paragraphs included on the page. Although this Court acknowledges that parties are always free to contract away their rights, we cannot, under the circumstances, ignore the inconspicuous nature of a provision, which was drafted by the superior party, and which functioned to contract away certain significant rights and remedies otherwise available to Simpson by law. Furthermore, and contrary to Addy's argument, the present transaction may be distinguished from that in *Carolina Care Plan, Inc. v. United HealthCare Services, Inc.*, 361 S.C. 544, 606 S.E.2d 752 (2004), where both parties were sophisticated business interests in an arms-length negotiation.

Accordingly, we find that when considered as a whole and in the context of an adhesion contract for a vehicle trade-in, the circumstances reveal that Simpson had no meaningful choice in agreeing to arbitrate claims with Addy.

## B. Oppressive and one-sided terms

### 1. Limitation on statutory remedies in an arbitration clause

 Addy contends that the arbitration clause's limitation on statutory remedies was not oppressive and one-sided. We disagree.

The arbitration clause in Simpson's contract with Addy provides that "[i]n no event shall the arbitrator be authorized to award punitive, exemplary, double, or treble damages (or any other damages which are punitive in nature or effect) against either party." Simpson's underlying complaint filed in civil court alleged, among other things, that Addy violated the South Carolina Uniform Trade Practices Act (SCUPTA) and the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act (Dealers Act). The SCUPTA requires a

---

4. This included phrases in the "Disclaimer of Warranties" provision and the "Used Vehicle Disclosure." We note that S.C.Code Ann. § 36–2–316 (2003) requires disclaimers of implied warranties to be "conspicuous."

court to award treble damages for violations of the statute.[5] Similarly, the Dealers Act requires a court to award double damages for violations of the statute.[6]

In arguing that this provision was not oppressive and one-sided, Addy relies on *Carolina Care Plan*. In that case, this Court held that the issue of whether an arbitration clause prohibiting an arbitrator from awarding "punitive damages" violated the public policy of the SCUTPA was not ripe for review. 361 S.C. 544, 606 S.E.2d 752. The Court explained that "an arbitrator may or may not choose to award treble damages in accordance with the SCUTPA, depending upon whether an arbitrator finds the SCUPTA was violated and whether the arbitrator finds that statutory treble damages are punitive or compensatory damages." *Id.* at 557, 606 S.E.2d at 759 (discussing *PacifiCare Health Systems v. Book*, 538 U.S. 401, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003) (holding it was premature to conclude that meaningful relief for the plaintiff under RICO was unavailable in arbitration because the arbitrator may conclude that a restriction on "punitive damages" in an arbitration clause did not preclude the authorization of treble damages under RICO)).

Addy's comparison falls short. In fact, the present case requires the *Carolina Care Plan* analysis to be taken one step further because the arbitration clause at issue here goes beyond banning "punitive" damages generally and specifically prohibits an arbitrator from awarding statutorily required treble or double damages. Therefore, an arbitrator's ultimate classification of an award as "compensatory" or "punitive" is no longer relevant in an analysis of whether this particular clause is unconscionable: under this arbitration clause, treble and double damages—whether classified as compensatory or punitive—are prohibited outright.

The general rule is that courts will not enforce a contract which is violative of public policy, statutory law, or provisions

---

5. *See* S.C.Code Ann. § 39–5–140(a) (1976) (providing that a "court *shall* award three times the actual damages sustained and may provide such other relief as it deems necessary or proper" [emphasis added]).

6. *See* S.C.Code Ann. § 56–15–110(1) (2006) (providing that an individual "*shall* recover double the actual damages by him sustained" [emphasis added]).

of the Constitution. *Carolina Care Plan,* 361 S.C. at 555, 606 S.E.2d at 758. In our opinion, this rule has two applications in the present case. First, this arbitration clause violates statutory law because it prevents Simpson from receiving the mandatory statutory remedies to which she may be entitled in her underlying SCUTPA and Dealers Act claims. Second, unconditionally permitting the weaker party to waive these statutory remedies pursuant to an adhesion contract runs contrary to the underlying statutes' very purposes of punishing acts that adversely affect the public interest.[7] Therefore, under the general rule, this provision in the arbitration clause is unenforceable.

Accordingly, we find the provision prohibiting double and treble damages to be oppressive, one-sided, and not geared toward achieving an unbiased decision by a neutral decision-maker. In conjunction with Simpson's lack of meaningful choice in agreeing to arbitrate, this provision is an unconscionable waiver of statutory rights, and therefore, unenforceable.

### 2. Dealer's remedies not stayed pending outcome of arbitration

Addy argues that the arbitration clause's provision reserving certain judicial remedies to the dealer and authorizing the award of the dealer's remedies even if the consumer's arbitration proceedings have not concluded is not oppressive and one-sided. We disagree.

---

7. This Court has previously recognized the strong public policy notions behind the enactment of the SCUPTA and the Dealers Act. *See deBondt v. Carlton Motorcars, Inc.,* 342 S.C. 254, 263, 536 S.E.2d 399, 404 (Ct.App.2000) ("It is a violation of the Dealers Act for any manufacturer or motor vehicle dealer 'to engage in any action which is arbitrary, in bad faith, or unconscionable and which causes damage to any of the parties or to the public.' " (citing S.C.Code Ann. § 56–15–40(1) (1991))); *Young v. Century Lincoln–Mercury, Inc.,* 302 S.C. 320, 326, 396 S.E.2d 105, 108 (Ct.App.1989) (defining an unfair trade practice as a practice which is "offensive to public policy or which is immoral, unethical, or oppressive"), *aff'd in part, rev'd in part, on other grounds,* 309 S.C. 263, 422 S.E.2d 103 (1992) (per curiam). The Dealers Act also specifically provides that "any contract or part thereof or practice thereunder in violation of any provision of this chapter shall be deemed against public policy and shall be void and unenforceable." S.C.Code Ann. § 56–15–130 (2006).

While stating that "all disputes, claims or controversies between Dealer and Customer" are to be settled in binding arbitration, the arbitration clause notes several exceptions. Specifically, the clause provides:

Nothing in this contract shall require the Dealer to submit to arbitration any claims by Dealer against Customer for claim and delivery, repossession, injunctive relief, or monies owed by Consumer in connection with the purchase or lease of any vehicle and *any claims by Dealer for these remedies shall not be stayed pending the outcome of arbitration.* [emphasis added].

Our courts have held that lack of mutuality of remedy in an arbitration agreement, on its own, does not make the arbitration agreement unconscionable. *See Munoz,* 343 S.C. at 542, 542 S.E.2d at 365 (holding that an arbitration agreement between a consumer and a lender was not unconscionable where it allowed the lender to seek foreclosure while requiring the consumer to arbitrate any counterclaim in the foreclosure action); *Lackey v. Green Tree Financial Corp.,* 330 S.C. at 402, 498 S.E.2d at 905 (same). The primary basis for this conclusion in *Munoz* and *Lackey* was that requiring one party to seek a remedy through arbitration rather than the judicial system did not deprive that party of a remedy altogether. *See Munoz,* 343 S.C. at 542, 542 S.E.2d at 365. The *Lackey* court additionally explained that the judicial remedies which the lender in that case had reserved for itself (*i.e.* replevin and foreclosure actions) provided specific procedures for protecting the collateral and the parties during the pendency of the arbitration proceedings. *Lackey,* 330 S.C. at 401, 498 S.E.2d at 905. Because these protections related to both parties and were facilitated by enforcement procedures specified by law, the court of appeals concluded that, regardless of the lack of mutuality of remedy, the arbitration clause bore "a reasonable relationship to the business risks" inherent in secured transactions. *Id.*

However, the essence of Simpson's unconscionablity claim is not the general lack of mutuality of remedy, but rather the arbitration agreement's express stipulation that the dealer may bring a judicial proceeding that completely disregards any pending consumer claims that require arbitration. The clauses at issue in *Munoz* and *Lackey* contained no such

directives. To this effect, we can easily envision a scenario in which a dealer's claim and delivery action is initiated in court, completed, and the vehicle sold prior to an arbitrator's determination of the consumer's rights in the same vehicle. As the arbitration agreement between Simpson and Addy is written, the dealer collects on a judgment awarded in a judicial proceeding regardless of any protections for the collateral afforded by law.

Addy's suggestion that there are procedural motions [8] available to the consumer which offset any potentially inconsistent effects of this provision, in our opinion, shows an informal acknowledgement on the part of Addy that such a provision on its face is indeed one-sided. These procedural mechanisms only act to place an additional burden on the consumer to ensure that the vehicle in controversy is not disposed of in a court proceeding initiated by the dealer before the adjudication of the consumer's claims in arbitration.

We continue to abide by our previous holdings in *Munoz* and *Lackey* that lack of mutuality of remedy will not invalidate an arbitration agreement. However, we find that the provision in the arbitration clause dictating that the dealer's judicial remedies supersede the consumer's arbitral remedies is one-sided and oppressive and does not promote a neutral and unbiased arbitral forum. Accordingly, in light of Simpson's lack of meaningful choice in agreeing to arbitrate, the provision is unconscionable and unenforceable.

### 3. Limitation on bringing warranty claims in a judicial forum

 Addy argues that Simpson may not attack the arbitration clause on the grounds that it violates the Magnuson–Moss Warranty Act (MMWA), 15 U.S.C.A § 2301 *et seq.* (1997), because Simpson's underlying claims alleged no violation of the MMWA. We disagree.

The arbitration clause in the contract between Simpson and Addy states that it applies to "any and all disputes" including "automobile warranty" and "any consumer protection stat-

---

8. Specifically, Addy suggests that a motion for protective order or a motion to stay pending arbitration.

ute"—all of which implicate the MMWA. The provision further specifies that such matters are to be resolved only by "binding arbitration."

Rules promulgated by the Federal Trade Commission (FTC) state that informal dispute resolution procedures set forth in *written* warranties under the MMWA are not to be legally binding on any person. 16 C.F.R. § 703.5(j) (2006). *See also Richardson v. Palm Harbor Homes, Inc.,* 254 F.3d 1321 (11th Cir.2001). Moreover, the MMWA has been interpreted to supersede the FAA with respect to consumer claims for breach of written warranty. *See Boyd v. Homes of Legend, Inc.,* 981 F.Supp. 1423, 1437–38 (M.D.Ala.1997). Therefore, the federal government has made it clear that parties may not agree to arbitrate an MMWA claim as the arbitration clause between Simpson and Addy attempted to do here.

 This Court will not enforce a contract which is violative of public policy, statutory law, or provisions of the Constitution. *Carolina Care Plan,* 361 S.C. at 555, 606 S.E.2d at 758. The fact that Simpson did not bring a claim under the MMWA is irrelevant to our conclusion that the inclusion of the MMWA in the scope of the arbitration clause is unenforceable as a matter of public policy. Accordingly, we hold that this provision of the arbitration clause is an unconscionable and unenforceable violation of public policy.

## C. Severability

In the alternative to its argument that the arbitration clause is not unconscionable, Addy suggests that any provision found by this Court to be unconscionable may be severed from the clause and arbitration allowed to otherwise proceed. In fact, it seems as though the "Additional Terms and Conditions" section of the contract anticipated just such a scenario. Paragraph fifteen (15) articulates a severability clause providing that:

In the event any provision of this contract shall be held invalid, illegal, or unenforceable, the validity, legality, and

enforceability of the remaining provisions shall not be affected or impaired thereby.

We disagree.

In consideration of the federal and state policies favoring arbitration agreements, severability clauses have been used to remove the unenforceable provisions in an arbitration clause while saving the parties' overall agreement to arbitrate. *See Healthcomp Evaluation Servs. Corp. v. O'Donnell*, 817 So.2d 1095, 1098 (Fla.Ct.App.2d Dist.2002) (holding that an arbitration clause was divisible and therefore a severability provision acted to remove the unenforceable provision from the arbitration clause without affecting the intent of the parties); *Primerica Fin. Servs. v. Wise*, 217 Ga.App. 36, 456 S.E.2d 631, 635 (1995) (upholding the trial court's application of a severability clause to an arbitration agreement "in light of the liberal federal policy favoring arbitration agreements and the parties' intentions in entering into those agreements"). Additionally, legislation permits this Court to "refuse to enforce" any unconscionable clause in a contract or to "limit its application so as to avoid an unconscionable result." S.C.Code Ann. § 36-2-302(1) (2003).

At the same time, courts have acknowledged that severability is not always an appropriate remedy for an unconscionable provision in an arbitration clause. Although, "a critical consideration in assessing severability is giving effect to the intent of the contracting parties," the D.C. Circuit recently cautioned, "If illegality pervades the arbitration agreement such that only a disintegrated fragment would remain after hacking away the unenforceable parts, the judicial effort begins to look more like rewriting the contract than fulfilling the intent of the parties." *Booker v. Robert Half Intn'l Inc.*, 413 F.3d 77, 84–85 (D.C.Cir.2005) (citations omitted). Similarly, the general principle in this State is that it is not the function of the court to rewrite contracts for parties. *Lewis v. Premium Inv. Corp.*, 351 S.C. 167, 171, 568 S.E.2d 361, 363 (2002).

In this case, we find the arbitration clause in the adhesion contract between Simpson and Addy wholly unconscionable and unenforceable based on the cumulative effect of a number of oppressive and one-sided provisions contained within the entire clause. While this Court does not ignore

South Carolina's policy favoring arbitration, we hold that the intent of the parties is best achieved by severing the arbitration clause in its entirety rather than "rewriting" the contract by severing multiple unenforceable provisions.[9]

---

9. We acknowledge that in light of the state and federal policies favoring arbitration, many courts view severing the offending provision and otherwise proceeding with arbitration to be the preferred remedy for an unconscionable provision in an arbitration clause. However, we find the present case is distinguishable from those cases prescribing severability such that the invalidation of the arbitration clause in its entirety is the more appropriate remedy.

First, the arbitration clause in the contract between Simpson and Addy contained a total of three unconscionable provisions while arbitration clauses examined by courts prescribing severability generally contained only one offending provision. *See Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir.2006) (severing a provision in an arbitration clause that prohibited the award of treble damages); *Safranek v. Copart, Inc.*, 379 F.Supp.2d 927 (D.Ill.2005) (severing a provision in an arbitration clause that violated Title VII by requiring each party to bear its own attorney's fees and costs); *Ex parte Celtic Life Ins. Co.*, 834 So.2d 766 (Ala.2002) (severing a provision in an arbitration clause that was void as a violation of public policy by prohibiting the award of punitive damages); *Healthcomp Evaluation Servs. Corp.*, 817 So.2d 1095 (severing a provision in an arbitration clause that violated state law by not permitting the parties to appeal or review an arbitration award). *But see Primerica Fin. Servs. v. Wise*, 217 Ga.App. 36, 456 S.E.2d 631 (severing two provisions governing the eligibility of arbitrators and the judicial review of an arbitration). Second, two of the provisions in this case were found unconscionable because the provisions contravened state and federal consumer protection law. The sheer magnitude of unconscionability present in a provision that prevents a party from vindicating the party's statutory rights, along with the fact that such a grossly unconscionable provision occurred not once, but *twice*, requires that we give significant consideration to a remedy in this situation that best serves the interests of public policy. *See Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1249 (9th Cir.1994) (noting that severance of illegal provisions is inappropriate when the entire arbitration clause represents an "integrated scheme to contravene public policy" (citations omitted)).

Accordingly, while this Court generally would encourage severability of an unconscionable provision, we do not view the arbitration agreement between Simpson and Addy to be a proper candidate for the application of this remedy. *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1180 (9th Cir.2003); (finding arbitration agreement wholly unenforceable because of an "insidious pattern" of unconscionable provisions, and therefore "any earnest attempt to ameliorate the unconscionable aspects of [the] arbitration agreement would require [the] court to assume the role of contract author rather than interpreter"); *In re Cotton Yarn Antitrust Litig.*, 406 F.Supp.2d 585, 604 (M.D.N.C. 2005) ("[W]here, as here, multiple provisions of the arbitration clauses

Additionally, we note that there is no specific set of factual circumstances establishing the line which must be crossed when evaluating an arbitration clause for unconscionability. Therefore, in holding today that the arbitration clause in the vehicle trade-in contract between Addy and Simpson is unconscionable due to a multitude of one-sided terms, we do not overrule our decision in *Munoz* where we held that an adhesion contract between a consumer and a lender was not unconscionable because it lacked mutuality of remedy. Instead, we emphasize the importance of a case-by-case analysis in order to address the unique circumstances inherent in the various types of consumer transactions.

Accordingly, we affirm the trial court's denial of the motion to compel arbitration.

### III. Presentation of evidence to determine unconscionability

■ Addy argues that the trial court erred in failing to provide Addy a reasonable opportunity to present evidence as to the commercial setting, purpose, and effect of the arbitration clause in order to aid the court in making a determination on unconscionability. We disagree.

S.C.Code Ann. § 36-2-302(2) (2003) provides:

When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

Simpson filed her memorandum in opposition to Addy's motion alleging the unconscionability of the arbitration clause on March 16. After a motion hearing that same day, the trial court ordered mediation. When mediation failed, the court ordered Addy to submit a memorandum in support of its motion, which it did on July 13. The court considered the arguments in both memoranda before issuing its order on August 12.

---

are inconsistent with Plaintiffs' ability to effectively vindicate their statutory rights ..., the Court finds that the better course of action in this case is to excise the arbitration clauses altogether.").

In our opinion, the four months that passed between Simpson's memorandum and Addy's response was a "reasonable opportunity" for Addy to consider Simpson's arguments and respond with respect to the commercial setting, purpose, and effect of the arbitration clause. Accordingly, the trial court's consideration of the parties' memoranda without a hearing did not deny Addy a reasonable opportunity to present its evidence in order to aid the court's determination.

## CONCLUSION

For the foregoing reasons, we find the arbitration clause between Simpson and Addy unconscionable and unenforceable in its entirety. Accordingly, we affirm the trial court's denial of Addy's motion to stay litigation pending arbitration.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.