693 S.E.2d 394

Heather HERRON, Natalie Armstrong, Michael Ritz, Julie Freeman, Christine Watts, Alison Dannert, Michael Blease, Michael Watts, Individually and for the Benefit of All Car Buyers Who Paid "Administrative Fees" as Described below to Defendants, Respondents,

v.

CENTURY BMW a/k/a Sonic Automotive; Dick Dyer & Associates, Inc.; Galeana Chrysler Plymouth, Inc., a/k/a Galeana Chrysler Jeep, Inc.; J.L.H. Investments LP a/k/a Hendrick Honda; Overland, Inc., d/b/a Land Rover of Columbia; Taylor Toyota a/k/a Taylor Investments; and Toyota of Greenville, Inc. et. al., Defendants

of whom Century BMW a/k/a Sonic Automotive is the Appellant.

No. 26805.

Supreme Court of South Carolina.

Heard Jan. 20, 2010.

Decided April 19, 2010.

Rehearing Denied June 9, 2010.

526

528

Dennis M. Black and Ryan L. VanGrack, of Williams & Connolly, of Washington, Steven W. Hamm, C. Jo Anne Wessinger–Hill, David A. Anderson, and Jocelyn T. Newman, all of Richardson, Plowden & Robinson, of Columbia, for Appellant.

A. Camden Lewis and Brady R. Thomas, both of Lewis & Babcock, of Columbia, Gedney M. Howe, III, of Charleston, Michael Eugene Spears, of Spartanburg, and Richard A. Harpootlian, of Columbia, for Respondents.

Justice KITTREDGE.

This case concerns the enforceability of an arbitration agreement. Respondents Christine and Michael Watts entered into a contract with Appellant Century BMW (Century) for the purchase of a car. The transaction included the execution of an arbitration agreement. Subsequently, the Wattses filed a class action suit against Century alleging the dealership had charged illegal administrative fees. Century moved to compel arbitration. The trial court found the arbitration agreement was unconscionable and unenforceable and denied the motion to compel. Century appealed, and we granted certification pursuant to Rule 204, SCACR.

We hold the arbitration agreement, although an adhesion contract, is not unconscionable. Yet the arbitration provision prohibiting class actions is against public policy, which would ordinarily be severed pursuant to the agreement's severance clause. Century has insisted, however, that if the class action prohibition provision is unenforceable, it will abandon the balance of its rights under . the arbitration agreement and consent to the action proceeding in the trial court. Although the arbitration agreement is otherwise enforceable, in accordance with Century's request, we affirm in result the trial court's order denying the motion to compel arbitration.

530

**I.**

In 2005, Michael Watts began looking for a car to purchase for his daughter, Christine Watts, as a graduation present. He negotiated with Century for the sale of a 2004 BMW Z4 convertible. Michael gave Century a bottom line price of $32,000, which Century initially rejected, but ultimately accepted. On the day of sale, Century presented a packet of documents Michael and Christine were to sign. Within the packet was a document titled *"ARBITRATION AGREEMENT."* The arbitration agreement provided that any dispute between the parties would be subject to arbitration [1] and that the agreement was governed by the Federal Arbitration Act (FAA). The agreement further provided that the parties were waiving their right to bring or participate in a class action suit.

The Wattses brought a class action suit against Century and numerous other car dealerships in South Carolina, alleging the dealers charged an illegal administrative fee in violation of the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Dealers Act"). S.C.Code Ann. § 56–15–10 *et. seq.* (2005). Century filed a motion to compel arbitration pursuant to the terms of the agreement. Relying heavily on *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 644 S.E.2d 663 (2007), the trial court found the arbitration agreement was unconscionable because there was an absence of a meaningful choice and the agreement contained oppressive and one-sided terms. Accordingly, the trial court found the arbitration agreement was unenforceable and denied Century's motion to compel.

**II.**

**A.**

### Arbitration

The question of arbitrability of a claim is an issue for the courts. *Partain v. Upstate Automotive Group*, 386 S.C. 488, 689 S.E.2d 602 (2010) (Shearouse Adv. Sh. No. 6 at 28).

---

1. The Wattses have never contended that this dispute is not within the scope of the arbitration agreement.

The determination of whether a claim is subject to arbitration is subject to de novo review, but a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings. *Id.*

At the outset, we recognize that there is a strong presumption in favor of the validity of arbitration agreements because both state and federal policy favor arbitration of disputes. *Heffner v. Destiny, Inc.*, 321 S.C. 536, 537, 471 S.E.2d 135, 136 (1995). At the same time, general contract principles of state law apply to a court's evaluation of the enforceability of an arbitration clause governed by the FAA. *Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 539, 542 S.E.2d 360, 364 (2001) (citing *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 685, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). To this end, if a court as a matter of law finds any clause of a contract involving the sale of goods to have been unconscionable at the time it was made, the court may refuse to enforce the unconscionable clause, or so limit its application so as to avoid any unconscionable result. S.C.Code Ann. § 36–2–302(1) (2003).

## B.

### Adhesion Contract

The Wattses and Century dispute whether this contract is an adhesion contract. Century argues the transaction was thoroughly negotiated and the sale was not conditioned upon the Wattses agreeing to sign the arbitration agreement. The Wattses, on the other hand, argue there is evidence to support the trial court's finding that this was an adhesion contract, including the fact that this was a standard form contract. It appears that one customer (and certainly no more than a few customers) out of approximately six thousand failed to sign the arbitration agreement.

We agree with the trial court that this is an adhesion contract. This was a contract on a standard form, presented on a take-it-or-leave-it basis. The Wattses did not contribute to the drafting of the contract or possess the bargaining power to negotiate the terms of the contract.[2] *See Lackey v. Green*

---

**2.** Although the Wattses negotiated the *price of the car,* they did not have the power to negotiate the *terms of the contract.*

*Tree Fin. Corp.*, 330 S.C. 388, 394, 498 S.E.2d 898, 901 (Ct.App.1998) (recognizing a contract of adhesion is generally thought of as a standard form contract, offered on a take-it-or-leave-it basis, containing non-negotiable terms). Nevertheless, although this Court has approached adhesion contracts between a consumer and automobile retailer with "considerable skepticism," adhesion contracts are not per se unconscionable. *Simpson*, 373 S.C. at 27, 644 S.E.2d at 669. Finding a contract to be one of adhesion is merely the beginning point in the analysis of whether the contract is unconscionable. *Lackey*, 330 S.C. at 395, 498 S.E.2d at 902.

## C.

### Unconscionability

■ In South Carolina, unconscionability is defined as the absence of meaningful choice on the part of one party, due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them. *Simpson*, 373 S.C. at 25, 644 S.E.2d at 668.

### 1. Absence of Meaningful Choice

■ Absence of meaningful choice on the part of one party generally speaks to the fundamental fairness of the bargaining process in the contract at issue. *Id.* at 25, 644 S.E.2d at 669. In determining whether there is an absence of a meaningful choice, courts consider the relative disparity in the parties' bargaining power; the parties' relative sophistication; the nature of the injuries suffered by the plaintiff; whether the plaintiff is a substantial business concern; whether there is an element of surprise in the inclusion of the challenged clause; and the conspicuousness of the clause. *Id.*

We are firmly convinced and find the Wattses had a meaningful choice in signing the contract. We recognize that this was a contract for the sale of a vehicle Christine Watts planned to use as her primary means of transportation, "which is critically important in modern day society." *Id.* at 27, 644 S.E.2d at 670. We also recognize that there was an inherent disparity in bargaining power between the parties, as this was

a transaction between a consumer and a commercial entity.[3] However, the arbitration agreement is a separate, one-page document which both Michael and Christine Watts signed. It is clearly labeled to be an arbitration agreement at the top of the document in bold, capital, and underlined font. The important terms and provisions of the agreement appear in the body of the contract and again in capital letters just above the signature line.

■ The Wattses both admitted they did not read the arbitration agreement, and their deposition testimony confirmed the failure to read the documents was solely attributed to them and not to Century's actions. Our jurisprudence forbids us to allow the Wattses to invalidate the enforceability of the arbitration agreement by claiming they did not read it. *Regions Bank v. Schmauch*, 354 S.C. 648, 663, 582 S.E.2d 432, 440 (Ct.App.2003) (citing *Sims v. Tyler*, 276 S.C. 640, 643, 281 S.E.2d 229, 230 (1981)) ("A person who signs a contract or other written document cannot avoid the effect of the document by claiming he did not read it.").

This arbitration agreement and the actions of Century surrounding the transaction are markedly different from the actual agreement as well as surrounding circumstances in *Simpson*. The *Simpson* arbitration agreement was inconspicuously buried in the sales contract, on the opposite page from the customer's signature, in paragraph "10" of sixteen other paragraphs. Additionally, the *Simpson* customer alleged the contract was "hastily" presented for her signature.

The significant features that impacted the unconscionability determination in *Simpson* are not present here. We hold the Wattses had a meaningful choice in making the decision to enter into this contract with Century.

### 2. Oppressive One–Sided Terms

■ First, we will address the provisions in the arbitration agreement, save for the provision prohibiting a customer from bringing a class action suit against Century.

---

3. Contrary to Century's assertion, we find no significance in the fact that this was a luxury vehicle or that Christine Watts was "highly-educated." These factors do not change the "consumer/business nature" of the transaction.

Under the agreement, all claims must be brought within the applicable statute of limitations, the arbitrator shall be an attorney or retired judge, and each party is responsible for his or her own attorney's fees. Additional terms include: no arbitration is required if the claim is brought in small claims court; the arbitration shall be conducted, at the customer's option, in the federal district in which the customer resides or in which the vehicle was purchased; the arbitrator shall apply governing local, state or federal laws and award damages or other relief allowed by such governing laws; if the customer initiates a claim, Century will pay the portion of the filing fee which exceeds the court filing fee; if Century initiates the claim, it will pay the entire filing fee; Century will pay up to $1,500 of the arbitrator's fees; and parties shall equally share fees in excess of $1,500.

In our view, these terms are neither oppressive nor one-sided. Moreover, nothing in the agreement prevents the arbitrator from awarding punitive damages or double or treble compensatory damages, nor does the agreement limit any available statutory remedies. Several provisions favor the customer, such as allowing the customer a choice of venue and Century's obligation to pay certain fees. Moreover, both the customer and Century are subject to the same terms in the arbitration agreement, thus there is no lack of mutuality of remedy. *See Simpson,* 373 S.C. at 32, 644 S.E.2d at 672 (adhering to previous holdings in that lack of mutuality of remedy will not invalidate an arbitration agreement, but finding the provision dictating that the dealer's judicial remedies supersede the consumer's arbitral remedies was one-sided and oppressive).

These terms stand in sharp contrast to the terms present in *Simpson.* In *Simpson,* the arbitration provision required the customer to waive her right to mandatory statutory remedies, including the right to punitive damages and double and treble compensatory damages. There was a lack of mutuality of remedies, as the customer was forced to arbitrate all claims she may have had against the dealer, while the dealer reserved its right to judicial remedies in certain circumstances. Further, the scope of the arbitration agreement in *Simpson*

was so broad it included non-arbitratable disputes.[4]

### 3. Ban on Class Actions

 Finding the terms in the arbitration agreement not to be oppressive or one-sided, we next turn to the provision banning class action suits. This provision provides: "By entering into this Agreement the Parties are waiving their right to ... bring or participate in any class action or multi-plaintiff or claimant action in court or through arbitration." The Wattses argue this provision is unenforceable because it is oppressive in that it takes away statutory rights, and it is one-sided in that Century would not bring a class action suit against its customers. While we agree with the Wattses that the provision is unenforceable, we hold the ban on class actions is unenforceable on public policy grounds.

 The purpose of the Dealers Act is consumer protection. Damages are typically small in individual consumer cases, thereby discouraging plaintiffs from bringing individual actions. Our Legislature recognized this and expressly provided plaintiffs with the right to bring class action lawsuits for violations of the Dealers Act:

> When such action is one of common or general interest to many persons or when the parties are numerous and it is impracticable to bring them all before the court, one or more may sue for the benefit of the whole, including actions for injunctive relief.

Section 56–15–110(2). The Dealers Act further provides: "Any contract or part thereof or practice thereunder in violation of any provision of this chapter shall be deemed against public policy and shall be void and unenforceable." Section 56–15–130.

---

4. The Court found the scope of the arbitration agreement was broad enough to implicate claims arising under the Magnuson–Moss Warranty Act (MMWA), a federal statute that governs warranties on consumer products. The Court noted that federal regulations state that informal dispute resolution procedures set forth in written warranties under the MMWA are not to be legally binding on any person. 16 C.F.R. § 703.5(j) (2006). Accordingly, the Court held "the inclusion of the MMWA in the scope of the arbitration clause is unenforceable as a matter of public policy." *Simpson,* 373 S.C. at 33, 644 S.E.2d at 673.

Stated succinctly, the Legislature has made clear that the public policy of this State is to provide consumers with a non-waivable right to bring class action suits for violations of the Dealers Act and that any contract prohibiting a class action suit violates our State's public policy and is void and unenforceable. We note that courts across the country are split over whether an arbitration agreement may include a waiver of the right to bring a class action suit. *See Scott v. Cingular Wireless*, 160 Wash.2d 843, 161 P.3d 1000, 1004 (2007) (highlighting the split in authority with a list of nationwide cases finding class action waivers enforceable and unenforceable). We are guided by our state law, and the unmistakable statutory language contained in the Dealers Act indicating our Legislature intended for this to be a non-waivable right. We therefore hold this provision is unenforceable on public policy grounds. *See Carolina Care Plan, Inc. v. United HealthCare Servs., Inc.*, 361 S.C. 544, 555, 606 S.E.2d 752, 758 (2004) (holding the general rule is that courts will not enforce a contract which is violative of public policy, statutory law, or provisions of the Constitution).

### 4. *Severance*

 Finding this provision unenforceable would normally not end the inquiry on the enforceability of the remainder of the contract, as courts will attempt to sever an illegal provision in an otherwise valid contract and enforce the remaining terms.[5] The parties' arbitration agreement provides that "[i]f any part of this Agreement shall be deemed or found unenforceable for any reason, the remainder of the Agreement shall remain enforceable."

Nevertheless, counsel for Century unambiguously stated at oral argument that Century did not wish to invoke the severance clause and sever the provision banning class actions from the remainder of the agreement. Century unequivocally ex-

---

5. A severable contract is one in its nature and purpose susceptible of division and apportionment, with an emphasis on discerning the parties' intent. *Columbia Architectural Group, Inc. v. Barker*, 274 S.C. 639, 641, 266 S.E.2d 428, 429 (1980). Whether an illegal provision in an otherwise valid contract may be severed from the contract is a matter of the intent of the parties. *Beach Co. v. Twillman, Ltd.*, 351 S.C. 56, 64, 566 S.E.2d 863, 867 (Ct.App.2002).

pressed its intent for the arbitration agreement to stand or fall as a whole. Obviously, the Wattses seek to avoid the arbitration agreement and proceed in court. We will not provide a remedy that neither party seeks. We treat the issue of severability as abandoned. Therefore, we decline to enforce the arbitration agreement and affirm in result the trial court's denial of Century's motion to compel arbitration.

## III.

We hold, except for the provision prohibiting customers from bringing class actions, the arbitration agreement is not unconscionable, for the Wattses had a meaningful choice in entering this agreement and the agreement does not contain oppressive or one-sided terms. The arbitration agreement is enforceable except for the ban on class actions, which, under ordinary circumstances, would be severed. However, Century has abandoned its right to severance and seeks to litigate this matter in court if the ban on class actions is unenforceable. Accordingly, we affirm in result the trial court's order denying the motion to compel arbitration.

**AFFIRMED IN RESULT.**

TOAL, C.J., BEATTY, HEARN, JJ., and Acting Justice JAMES E. MOORE, concur.