PLEICONES, C.J., BEATTY, KITTREDGE, HEARN and FEW, JJ., concur.

791 S.E.2d 286

**ONE BELLE HALL PROPERTY OWNERS ASSOCIATION, INC. and Brandy Ramey, individually, and on behalf of all others similarly situated, Respondents,**

v.

**TRAMMELL CROW RESIDENTIAL COMPANY; TCR NC Construction I, LP; Belle Hall Direct 101, LP; TCR RLD Condominiums, Inc.; CS 101 Belle Hall, LP; TCR Southeast, Inc.; TCR Carolina Properties, Inc.; TCR SE Construction, Inc.; TCR SE Construction II, Inc.; TCR Construction, a division of Trammell Crow Residential; TCR Development, a division of Trammell Crow Residential; Trammell Crow Residential Carolina, a division of Trammell Crow Residential; and Tauer Con-**

---

sulting Company, Inc., a division of Trammell Crow Residential, each individually and collectively d/b/a "Trammell Crow Residential," "Trammell Crow" or "TCR"; Halter Properties, LLC; Halter Realty, LLC; and Halter Realty Group, LLC, each individually, and collectively d/b/a/ "Halter Companies"; Jane Doe 1–5; ABG Caulking & Waterproofing of Morristown, Inc. a/k/a ABG Caulking Contractors; Advanced Building Products & Services, LLC; BASF Corporation; Budget Mechanical Plumbing, Inc.; Builders First Source–Southeast Group, LLC; Builders Services Group, Inc., individually, and d/b/a Gale Contractor Services, Inc.; Century Fire Protection, LLC; Cline Design Association, P.A. and Gary D. Cline; Coastal Lumber & Framing, LLC; Dodson Brothers Exterminating Co., Inc. a/k/a Dodson Pest Control; First Exteriors, LLC; Flooring Services, Inc.; General Heating & Air Conditioning Company of Greenville, Inc. d/b/a General Heating and Air; Jimmy Warner, individually, and d/b/a Warner Heating & Air; Glazing Consultants, Inc.; GWC Roofing, Inc., individually, and d/b/a Southcoast Exteriors, Inc.; Houston Stafford Electrical Contractors, LP a/k/a IES Residential, Inc. d/b/a Houston Stafford Electric; KMAC of the Carolinas, Inc.; P&P Metal Sales Co., Inc. a/k/a P&P Metal Sales, LLC a/k/a P&P Metal Sales, Inc. a/k/a Carolina Metals; Pleasant Places, Inc.; Raymond Building Supply Corporation d/b/a Energy Saving Products of Florida, Inc. a/k/a Energy Saving Products of Florida; RS Custom Homes, LLC; Southern Specialties, Inc.; Structural Contractors South, Inc.; Superior Construction Services, Inc., individually, and d/b/a Superior Masonry Unlimited, Inc.; TAMKO Building Products, Inc. f/k/a TAMKO Roofing Products, Inc.; VNS Corporation, individually, and d/b/a Wholesale Building Products f/k/a Wholesale Building Materials, Inc.; What Don't We Do; and John Doe 1–25, Defendants,

Of whom TAMKO Building Products, Inc., is the Appellant.

VNS Corp., individually, and d/b/a Wholesale Building Products f/k/a Wholesale Building Materials,

Inc., Third–Party Plaintiff,

v.

Billy Grady d/b/a United Builders, LLC, Third–Party Defendant,

Houston Stafford Electrical Contractors, LP a/k/a
IES Residential, Inc. d/b/a Houston Stafford
Electric, Third–Party Plaintiff,

v.

J. Correa Electrical Company, LLC, Third–Party Defendant.

Appellate Case No. 2014–002115
Opinion No. 5407

Court of Appeals of South Carolina.

Heard May 4, 2016
Filed June 1, 2016
Withdrawn, Substituted and Refiled September 28, 2016

54

Richard Hood Willis, Paula Miles Burlison, and Angela Gilbert Strickland, all of Bowman & Brooke, LLP, of Columbia, for Appellant.

Justin O'Toole Lucey and Dabny Lynn, both of Justin O'Toole Lucey, P.A., of Mount Pleasant, for Respondents.

WILLIAMS, J.:

In this civil matter, Tamko Building Products, Inc. (Tamko) appeals the circuit court's denial of its motion to dismiss One Belle Hall Property Owners Association, Inc. (the Association) and Brandy Ramey's (collectively "Respondents") claims and compel them to arbitration. Tamko argues the court erred in finding the arbitration agreement located in its limited warranty was unconscionable and unenforceable. We reverse.

**FACTS/PROCEDURAL HISTORY**

This appeal arises from a dispute over the construction of One Belle Hall (OBH), an upscale condominium community in

Mount Pleasant, South Carolina. The Association is responsible for the management and administration of the OBH community as well as the investigation, maintenance, and repair of its common elements. Headquartered in Joplin, Missouri, Tamko manufactures and sells residential and commercial roof shingles nationally and internationally.

During the construction of OBH, and prior to the transfer of ownership from its developers to the Association, a roofing subcontractor installed Tamko's "Elite Glass–Seal AR" asphalt shingles to the roofs of the condominium community's four buildings. Tamko covered the installed shingles with a twenty-five-year "repair or replace" limited warranty (Warranty) against manufacturing defects. At issue in this case is a binding arbitration provision on page five of the Warranty information that provided the following:

**MANDATORY BINDING ARBITRATION:** EVERY CLAIM, CONTROVERSY, OR DISPUTE OF ANY KIND WHATSOEVER INCLUDING WHETHER ANY PARTICULAR MATTER IS SUBJECT TO ARBITRATION (EACH AN "ACTION") BETWEEN YOU AND TAMKO (INCLUDING ANY OF TAMKO'S EMPLOYEES AND AGENTS) RELATING TO OR ARISING OUT OF THE SHINGLES OR THIS LIMITED WARRANTY SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION, REGARDLESS OF WHETHER THE ACTION SOUNDS IN WARRANTY, CONTRACT, STATUTE OR ANY OTHER LEGAL OR EQUITABLE THEORY. TO ARBITRATE AN ACTION AGAINST TAMKO, YOU MUST INITIATE THE ARBITRATION IN ACCORDANCE WITH THE APPLICABLE RULES OF ARBITRATION OF THE AMERICAN ARBITRATION ASSOCIATION (WHICH ARE AVAILABLE ONLINE AT www.adr.com OR BY CALLING THE AMERICAN ARBITRATION ASSOCIATION AT 1–800–778–7879) AND PROVIDE WRITTEN NOTICE TO TAMKO BY CERTI-

FIED MAIL AT P.O. BOX 1404, JOPLIN, MISSOURI 64802 WITHIN THE TIME PERIOD PRESCRIBED IMMEDIATELY BELOW.

**Legal Remedies: EXCEPT WHERE PROHIBITED BY LAW, THE OBLIGATION CONTAINED IN THIS LIMITED WARRANTY IS EXPRESSLY IN LIEU OF ANY OTHER OBLIGATIONS, GUARANTIES, WARRANTIES, AND CONDITIONS EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OR CONDITION OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND OF ANY OTHER OBLIGATIONS OR LIABILITY ON THE PART OF TAMKO BUILDING PRODUCTS, INC. IN NO EVENT SHALL TAMKO BE LIABLE FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES OF ANY KIND.** SOME STATES DO NOT ALLOW EXCLUSION OR LIMITATION OF IMPLIED WARRANTIES OR INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU. NO ACTION FOR BREACH OF THIS LIMITED WARRANTY OR ANY OTHER ACTION AGAINST TAMKO RELATING TO OR ARISING OUT OF THE SHINGLES, THEIR PURCHASE OR THIS TRANSACTION SHALL BE BROUGHT LATER THAN ONE YEAR AFTER ANY CAUSE OF ACTION HAS ACCRUED. IN JURISDICTIONS WHERE STATUTORY CLAIMS OR IMPLIED WARRANTIES AND CONDITIONS CANNOT BE EXCLUDED, ALL SUCH STATUTORY CLAIMS, IMPLIED WARRANTIES AND CONDITIONS AND ALL RIGHTS TO BRING ACTIONS FOR BREACH THEREOF EXPIRE ONE YEAR (OR SUCH LONGER PERIOD OF TIME IF MANDATED BY APPLICABLE LAWS) AFTER THE DATE OF PURCHASE. SOME STATES AND PROVINCES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY OR CONDITION LASTS, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU. THIS LIMITED WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS AND YOU MAY ALSO HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE AND PROVINCE TO PROVINCE. Invalidity or unenforceability of any provision herein

shall not affect the validity or enforceability of any other provision which shall remain in full force and effect.

ANY ACTION BROUGHT BY YOU AGAINST TAMKO WILL BE ARBITRATED (OR, IF ARBITRATION OF THE ACTION IS NOT PERMITTED BY LAW, LITI-GATED) INDIVIDUALLY AND YOU WILL NOT CON-SOLIDATE, OR SEEK CLASS TREATMENT FOR, ANY ACTION UNLESS PREVIOUSLY AGREED TO IN WRITING BY BOTH TAMKO AND YOU.

NO REPRESENTATIVE, EMPLOYEE OR OTHER AGENT OF TAMKO, OR ANY PERSON OTHER THAN TAMKO'S PRESIDENT, HAS AUTHORITY TO AS-SUME FOR TAMKO ANY ADDITIONAL LIABILITY OR RESPONSIBILITY IN CONNECTION WITH THE SHINGLES EXCEPT AS DESCRIBED ABOVE.

At some point following OBH's completion, Respondents assert the community's buildings were affected by moisture damage, water intrusion, and termite damage, all resulting from various alleged construction deficiencies. In February 2010, a developer of OBH contacted Tamko to report a warranty claim on the roof shingles, contending they were blistering and defective. As part of its standard warranty procedure, Tamko sent the developer a "warranty kit," requiring the claimant to provide proof of purchase, samples of the allegedly defective shingles, and photographs. The developer failed to return the warranty kit within 120 days and, therefore, Tamko inactivated the warranty plan.

On November 19, 2012, Respondents filed a proposed class action lawsuit on behalf of all owners of condominium units at OBH, alleging defective construction against the community's various developers. Respondents amended their complaint on December 30, 2013, to bring, *inter alia*, causes of action for negligence, breach of warranty, and strict liability against numerous contractors and commercial entities, including Tamko for its allegedly defective roof shingles. Tamko filed a motion to dismiss and compel arbitration on February 28, 2014, arguing Respondents were bound by the arbitration clause provided in the Warranty for its roof shingles. Respondents filed a memorandum in opposition to Tamko's motion, contending neither the Association nor the property owners

ever agreed to arbitrate, and the arbitration clause was unconscionable and unenforceable.

After holding a hearing on the matter, the circuit court denied Tamko's motion to compel arbitration on September 17, 2014. In its order, the court ruled that South Carolina law invalidated several of the Warranty's provisions, including the arbitration agreement. Specifically, the court noted that the sale of Tamko's shingles was based upon an adhesion contract, and Respondents lacked any meaningful choice in negotiating warranty and arbitration terms. Relying heavily upon two prior cases addressing the subject,[1] the court held the arbitration agreement was unconscionable and unenforceable due to the cumulative effect of several oppressive and one-sided terms in the Warranty. Last, the court found it could not uphold the arbitration agreement because it was not severable from the Warranty's unlawful terms. This appeal followed.

## STANDARD OF REVIEW

"The question of the arbitrability of a claim is an issue for judicial determination, unless the parties provide otherwise." *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001). This court reviews an arbitrability determination de novo. *Hall v. Green Tree Servicing, LLC*, 413 S.C. 267, 271, 776 S.E.2d 91, 94 (Ct. App. 2015). "Nevertheless, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings." *Simpson*, 373 S.C. at 22, 644 S.E.2d at 667.

## LAW/ANALYSIS

Tamko argues the circuit court erred in finding the arbitration provision located in the Warranty was unconscionable and unenforceable. We agree.

"The policy of the United States and South Carolina is to favor arbitration of disputes." *Zabinski*, 346 S.C. at 596, 553 S.E.2d at 118. Unless the parties have contracted otherwise, the Federal Arbitration Act[2] (FAA) applies in federal or

---

1. *See Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 644 S.E.2d 663 (2007); *Smith v. D.R. Horton, Inc.*, 403 S.C. 10, 742 S.E.2d 37 (Ct. App. 2013), *aff'd*, 417 S.C. 42, 790 S.E.2d 1 (2016).

2. 9 U.S.C. §§ 1–16 (2012).

state court to any arbitration agreement involving interstate commerce.[3] *Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 538, 542 S.E.2d 360, 363 (2001). The FAA provides that a written arbitration provision in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2012). "Under the FAA, an arbitration clause is separable from the contract in which it is embedded and the issue of its validity is distinct from the substantive validity of the contract as a whole." *Munoz*, 343 S.C. at 540, 542 S.E.2d at 364 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)).

"General contract principles of state law apply to arbitration clauses governed by the FAA." *Id.* at 539, 542 S.E.2d at 364. Thus, courts may invalidate arbitration agreements on general state law "contract defenses, such as fraud, duress, and unconscionability." *Zabinski*, 346 S.C. at 593, 553 S.E.2d at 116.

"In South Carolina, unconscionability is defined as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Simpson*, 373 S.C. at 24–25, 644 S.E.2d at 668. "In analyzing claims of unconscionability of arbitration agreements, the [U.S. Court of Appeals for the] Fourth Circuit has instructed courts to focus generally on whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker." *Id.* at 25, 644 S.E.2d at 668 (citing *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999)).

In *Simpson*, our supreme court held an arbitration clause in a vehicle trade-in contract between an automobile dealership and customer was unconscionable and unenforceable. 373 S.C. at 34, 644 S.E.2d at 674. In upholding the denial of the dealer's

---

3. Tamko is headquartered in Joplin, Missouri, and has several manufacturing facilities across the country, none of which are located in South Carolina. Therefore, because the subject shingles were sold in interstate commerce, the circuit court properly determined the FAA applies in this matter.

motion to compel arbitration, the court first found the customer had no meaningful choice in agreeing to arbitrate. *Id.* at 25–28, 644 S.E.2d at 669–70.

The court noted the trade-in agreement was an adhesion, or "take-it-or-leave-it," contract that it viewed with "considerable skepticism" because automobiles are necessities in modern society. *Id.* at 26–27, 644 S.E.2d at 669–70. According to the court, the customer lacked business judgment to fully understand the ramifications of agreeing to arbitrate, had no attorney present to assist her, and was "hastily" presented with the contract by the dealer for her signature. *Id.* at 27, 644 S.E.2d at 670.

Further, the *Simpson* court found the arbitration clause's limitation on statutory remedies was oppressive and one-sided. *Id.* at 28–30, 644 S.E.2d at 670–71. The court pointed out that the clause prohibited an arbitrator from awarding statutorily required double and treble damages for violations of the South Carolina Unfair Trade Practices Act [4] and the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act.[5] *Id.* at 28–29, 644 S.E.2d at 670–71. Specifically, the court explained the provision was unconscionable because its unconditional requirement that the customer waive statutory remedies ran contrary to the statutes' very purpose in punishing acts that adversely affect the public interest. *Id.* at 30, 644 S.E.2d at 671. The court also found a provision in the arbitration clause that allowed the dealer's judicial remedies to supersede the customer's arbitral remedies was unconscionable because it failed to promote a neutral and unbiased arbitral forum. *Id.* at 30–32, 644 S.E.2d at 671–72. While the provision forced the customer to submit all of her claims to arbitration, it preserved the dealer's right to bring judicial proceedings against the customer for various causes of action that would not be stayed pending the outcome of arbitration. *Id.* at 30, 644 S.E.2d at 672.

Based upon the cumulative effect of the foregoing oppressive and one-sided provisions contained within the entire clause, the *Simpson* court held the arbitration clause was

---

4. S.C. Code Ann. §§ 39–5–10 through –560 (1985 & Supp. 2015).

5. S.C. Code Ann. §§ 56–15–10 through –600 (2006 & Supp. 2015).

unconscionable and unenforceable. *Id.* at 34, 644 S.E.2d at 674. Last, the court ruled it could not sever the offensive provisions to save the arbitration clause because only a disintegrated fragment of the agreement would remain. *Id.* at 34–35, 644 S.E.2d at 673–74. Notwithstanding its finding that the dealer's arbitration clause was unconscionable, the court stressed "the importance of a case-by-case analysis ... to address the unique circumstances inherent in the various types of consumer transactions." *Id.* at 36, 644 S.E.2d at 674.

Following *Simpson*, this court later held an arbitration agreement embedded in a home sales contract was unconscionable and unenforceable. *D.R. Horton*, 403 S.C. at 14–15, 742 S.E.2d at 40–41. In *D.R. Horton*, the buyers purchased a house from a corporate homebuilder, which included an arbitration clause in its home purchase agreement. *Id.* at 12, 742 S.E.2d at 39. Paragraph 14 of the purchase agreement was titled "Warranties and Dispute Resolution," and it contained subparagraphs 14(a) through 14(j) addressing the obligations of the parties prior to and immediately following closing. *Id.* at 12–13, 742 S.E.2d at 39. While subparagraph 14(g) addressed arbitration between the parties, the homebuilder disclaimed various warranties in subparagraph 14(c) as well as liability for "monetary damages of any kind, including secondary, consequential, punitive, general, special[,] or indirect damages" in subparagraph 14(i). *Id.*

In upholding the circuit court's denial of the homebuilder's motion to compel arbitration, this court held the arbitration agreement was unconscionable, particularly in light of subparagraph 14(i) which exempted the homebuilder from all monetary damages. *Id.* at 15, 742 S.E.2d at 40–41. Furthermore, the court found it should not sever the arbitration provision from the unconscionable provisions located in paragraph 14, again highlighting the homebuilder's attempt to waive its liability for the purchasers' damages. *Id.* at 16–17, 742 S.E.2d at 41.

After granting the homebuilder's petition for a writ of certiorari, our supreme court affirmed this court's decision. *Smith v. D.R. Horton, Inc.*, 417 S.C. 42, 51, 790 S.E.2d 1, 5 (2016). The supreme court dismissed the homebuilder's assertion that the lower courts violated the *Prima Paint* [6] doctrine

---

**6.** In *Prima Paint,* the United States Supreme Court ruled that an arbitration agreement is separable from the contract in which it is

in looking beyond the express arbitration clause located in subparagraph 14(g) in their analysis of unconscionability because the various subparagraphs addressed important warranty information and contained numerous cross-references to each other. *Id.* at 48–49, 790 S.E.2d at 3–4. In construing the entirety of paragraph 14 as the arbitration agreement, the court held the buyers lacked any meaningful choice to arbitrate and the homebuilder's attempts to disclaim implied warranties and liability for all monetary damages were oppressive. *Id.* at 49–50, 790 S.E.2d at 4–5. Last, because the agreement did not contain a severability clause, the court found the parties did not intend for a court to sever any unconscionable terms from the arbitration agreement. *Id.* at 50 n. 6, 790 S.E.2d at 5 n. 6.

■ Turning to the instant case, we first acknowledge, and Tamko concedes, the Warranty is an adhesion contract based upon the sale of mass-produced goods. Consequently, we find the circuit court properly determined Respondents lacked any meaningful choice to arbitrate. However, our supreme court has made clear that adhesion contracts are not per se unconscionable. *See Simpson,* 373 S.C. at 27, 644 S.E.2d at 669; *see also id.* at 36, 644 S.E.2d at 674 (recognizing "the importance of a case-by-case analysis ... to address the unique circumstances inherent in the various types of consumer transactions"). Therefore, we turn to the second prong of the unconscionability analysis to determine whether no reasonable person would make or accept any oppressive or one-sided terms within the arbitration agreement. *See Simpson,* 373 S.C. at 24–25, 644 S.E.2d at 668 (stating that an unconscionability analysis has two prongs).

Upon our review of the arbitration agreement, we hold the circuit court erred in finding the purportedly unenforceable disclaimers and limitations within the "Legal Remedies" paragraph contributed to the unconscionability of the arbitration agreement. Specifically, we recognize that Tamko continuously used language to the effect that any attempted disclaimer or

embedded and the issue of its validity is distinct from the substantive validity of the contract as a whole. *See* 388 U.S. at 406, 87 S.Ct. 1801.

limitation did not apply to purchasers in jurisdictions that disallowed them. Moreover, unlike the arbitration agreement in *D.R. Horton*, the legal remedies paragraph contains a severability clause. Therefore, even considering the terms Respondents find objectionable, we are unable to conclude these terms are oppressive because they would not apply in the underlying dispute if the arbitrator found they violated South Carolina law.[7]

Next, we hold the circuit court erred in finding the arbitration agreement was not separable from other allegedly unconscionable provisions that precede the arbitration agreement on page five. *See Munoz*, 343 S.C. at 540, 542 S.E.2d at 364 (providing that, under the FAA, "an arbitration clause is separable from the contract in which it is embedded and the issue of its validity is distinct from the substantive validity of the contract as a whole"). On page four of the Warranty, Tamko included provisions that limited the transferability of the Warranty and excluded its liability for any damage to buildings resulting from defective shingles. In addition to being unconscionable, Respondents contend these provisions address Tamko's potential liability and must be read together with the arbitration agreement on the following page. We find, however, that such a construction of the contract violates the *Prima Paint* doctrine because these provisions are clearly outside the arbitration agreement. *See* 388 U.S. at 406, 87 S.Ct. 1801 (holding that courts may only consider the threshold question of whether the *arbitration agreement* is invalid, not whether the *contract as a whole* is invalid).

Finally, we find the arbitration provision facilitates an unbiased decision by a neutral decisionmaker in the event of a

---

7. In any event, we believe South Carolina's Commercial Code generally permits sellers of goods to include most of the limitations and exclusions found in the Warranty. *See* S.C. Code Ann. § 36–2–316(2)–(3) (2003) (allowing a seller to exclude or modify implied warranties); S.C. Code Ann. § 36–2–719(1)(a) (2003) (permitting a seller to repair or replace nonconforming goods in lieu of statutory remedies); § 36–2–719(3) (allowing a seller to exclude consequential damages); *see also York v. Dodgeland of Columbia, Inc.*, 406 S.C. 67, 91–94, 749 S.E.2d 139, 151–53 (Ct. App. 2013) (upholding a class action waiver in an arbitration agreement under the FAA).

dispute. *See Simpson*, 373 S.C. at 25, 644 S.E.2d at 668 (stating courts should generally focus on whether an arbitration clause is "geared towards achieving an unbiased decision by a neutral decisionmaker"). Pursuant to the arbitration agreement, the purchaser must submit "every claim, controversy, or dispute of any kind whatsoever" relating to Tamko's shingles or the Warranty to arbitration in accordance with the rules of the American Arbitration Association.[8] The arbitration agreement does not unduly limit a purchaser's right to a meaningful legal proceeding. In fact, the agreement even anticipates actions from purchasers that "sound[ ] in warranty, contract, statute[,] or any other legal or equitable theory."

## CONCLUSION

Based on the foregoing analysis, we hold the circuit court erred in finding the cumulative effect of the Warranty's purportedly unlawful terms rendered the arbitration agreement unconscionable and unenforceable. Therefore, the circuit court's order is

**REVERSED.**

LOCKEMY, C.J., and HUFF, J., concur.

---

**8.** Although the arbitration agreement may appear one-sided because only the consumer is required to submit claims to arbitration, Tamko contends it would never be forced to initiate a cause of action—such as a collection dispute—against an end user because it receives payment for its products upon delivery to its various distributors. Therefore, we find any perceived lack of mutuality in this commercial context does not make the arbitration agreement unconscionable because Respondents are not deprived of a remedy. *See Simpson*, 373 S.C. at 31, 644 S.E.2d at 672 ("Our courts have held that lack of mutuality of remedy in an arbitration agreement, on its own, does not make the arbitration agreement unconscionable."); *id.* (stating that requiring one party to seek a remedy through arbitration rather than the judicial system does not deprive that party of a remedy altogether).