**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Thayer W. Arredondo, as Personal Representative of the Estate of Hubert Whaley, deceased, Respondent,

v.

SNH SE Ashley River Tenant, LLC; FVE Managers, Inc.; Five Star Quality Care, Inc.; SNH SE Tenant TRS, Inc.; Senior Housing Properties Trust; SNH TRS, Inc.; Candy D. Cure; John Doe; Jane Doe; Richard Roe Corporation; and Mary Doe Corporation, Defendants,

Of which SNE SE Ashley River Tenant, LLC; FVE Managers, Inc.; Five Star Quality Care, Inc.; SNH SE Tenant TRS, Inc.; Senior Housing Properties Trust; SNH TRS, Inc.; and Candy D. Cure are the Appellants.

Appellate Case No. 2017-001298

———————

Appeal From Charleston County
J. C. Nicholson, Jr., Circuit Court Judge

———————

Unpublished Opinion No. 2019-UP-293
Heard June 5, 2019 – Filed August 14, 2019

———————

**REVERSED**

———————

G. Mark Phillips and Robert William Whelan, both of

Nelson Mullins Riley & Scarborough, LLP, of Charleston, for Appellants.

Kenneth Luke Connor and Christopher Caleb Connor, both of Connor & Connor LLC, of Aiken; and Laura Stewart Jordan, of Augusta, Georgia, for Respondent.

————————

**PER CURIAM:** SNE SE Ashley River Tenant, LLC; FVE Managers, Inc.; Five Star Quality Care, Inc.; SNH SE Tenant TRS, Inc.; Senior Housing Properties Trust; SNH TRS, Inc.; and Candy D. Cure (collectively, Appellants) appeal the trial court's denial of their motion to compel arbitration. They assert the trial court erred in holding neither the General Durable Power of Attorney nor the Health Care Power of Attorney provided nursing home resident Hubert Whaley's daughter, Thayer W. Arredondo, with actual or apparent authority to execute the Arbitration Agreement. They also assert the trial court erred in finding the Arbitration Agreement was unconscionable. We reverse.

## STANDARD OF REVIEW

"Arbitrability determinations are subject to de novo review." *Johnson v. Heritage Healthcare of Estill, LLC*, 416 S.C. 508, 512, 788 S.E.2d 216, 218 (2016) (quoting *Dean v. Heritage Healthcare of Ridgeway, LLC*, 408 S.C. 371, 379, 759 S.E.2d 727, 731 (2014)). "Nevertheless, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings." *Id.* (quoting *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 22, 644 S.E.2d 663, 667 (2007)). "The litigant opposing arbitration bears the burden of demonstrating that he has a valid defense to arbitration." *Id.* (citing *Dean*, 408 S.C. at 379, 759 S.E.2d at 731; *Gen. Equip. & Supply Co. v. Keller Rigging & Constr., S.C., Inc.*, 344 S.C. 553, 556, 544 S.E.2d 643, 645 (Ct. App. 2001)). "The policy of the United States and South Carolina is to favor arbitration of disputes." *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001) (citing *Tritech Elec., Inc. v. Frank M. Hall & Co.*, 343 S.C. 396, 399, 540 S.E.2d 864, 865 (Ct. App. 2000)).

## LAW/ANALYSIS

1. We agree with Appellants' argument the trial court erred in holding the authority granted to Arredondo by the two Powers of Attorney did not authorize her to enter into the Arbitration Agreement because arbitration was not specifically listed among the powers.

The Federal Arbitration Act (FAA)[1] "makes arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017) (quoting 9 U.S.C.A. § 2). "That statutory provision establishes an equal-treatment principle: A court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Id.* (quoting *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). "[T]he decision to enter into an arbitration agreement primarily concerns the signatory's decision to waive his or her right of access to the courts and right to a trial by jury." *Hodge v. UniHealth Post-Acute Care of Bamberg, LLC*, 422 S.C. 544, 566-67, 813 S.E.2d 292, 304 (Ct. App. 2018), *cert. denied*, (S.C. Sup. Ct. Order dated Aug. 21, 2018) (quoting *Dickerson v. Longoria*, 995 A.2d 721, 736-37 (Md. 2010)).

"A power of attorney is an instrument in writing by which one person, as principal, appoints another as his agent and confers upon him the authority to perform certain specified acts or kinds of acts on behalf of the principal." *Watson v. Underwood*, 407 S.C. 443, 454, 756 S.E.2d 155, 161 (Ct. App. 2014) (quoting *In re Thames*, 344 S.C. 564, 569, 544 S.E.2d 854, 856 (Ct. App. 2001)). The United States Supreme Court rejected the Kentucky Supreme Court's application of its "clear statement rule," which provided a power of attorney could not entitle a representative to enter into an arbitration agreement without specific language granting that authority. *Kindred Nursing Ctrs. Ltd. P'ship*, 137 S. Ct. at 1426-27. The Supreme Court explained, "Because that rule singles out arbitration agreements for disfavored treatment, we hold that it violates the FAA." *Id.* at 1425. Under South Carolina law, an act does not have to be specifically enumerated in a power of attorney in order for the agent to be authorized to perform the act on behalf of the principal. *See First S. Bank v. Rosenberg*, 418 S.C. 170, 181, 790 S.E.2d 919, 925-26 (Ct. App. 2016) (rejecting appellant's contention "that an agent cannot sign a guaranty on behalf of his principal pursuant to a power of attorney unless the power of attorney specifically authorized the execution because this assertion is unsupported by South Carolina law"). Applying the equal treatment principal, we hold a power of attorney does not need to explicitly refer to arbitration in order to grant the agent authority to execute an arbitration agreement as long as the powers granted are broad enough to include

---

[1] 9 U.S.C.A. §§ 1-16 (West 2009).

such an act.  Thus, we find the trial court erred in imposing a more restrictive requirement for authority to execute an arbitration agreement.

We turn to the language of the Powers of Attorney to determine whether they provided authority for Arredondo to execute the Arbitration Agreement on behalf of her father.

"Our courts have looked to contract law when reviewing actions to set aside or interpret a power of attorney." *Stott v. White Oak Manor, Inc.*, 426 S.C. 568, 577, 828 S.E.2d 82, 87 (Ct. App. 2019), *cert. pending*, (citing *In re Thames*, 344 S.C. at 571, 544 S.E.2d at 857; *Watson*, 407 S.C. at 454, 756 S.E.2d at 161).  "The cardinal rule of contract interpretation is to ascertain and give effect to the intention of the parties, and, in determining that intention, the court looks to the language of the contract." *Id.* (quoting *Watson*, 407 S.C. at 454-55, 756 S.E.2d at 161).  "Whe[n] the language of a contract is plain and capable of legal construction, that language alone determines the instrument's force and effect." *Id.* (quoting *Watson*, 407 S.C. at 455, 756 S.E.2d at 161).

We disagree with Arredondo's argument her authority under the General Durable Power of Attorney was limited solely to business affairs.  The broad language of this Power of Attorney granted Arredondo authority to execute all instruments concerning all types of property, including "choses in action."  Furthermore, this authority extended to "any other property, right or thing."  Likewise, the Health Care Power of Attorney was not limited to health care decisions as Arredondo contends.  It also authorized Arredondo to pursue legal action and to grant any waiver required by health care providers such as Appellants.  *But c.f.*, *Hodge*, 422 S.C. at 567, 813 S.E.2d at 304 (noting courts in other jurisdictions have held "the decision to sign an arbitration agreement was not a health care decision . . . [when] signing the arbitration agreement was not a prerequisite to admission to a health care facility" (quoting *Dickerson*, 995 A.2d at 738).  Thus, we hold the Powers of Attorney authorized Arredondo to waive the right to jury trial and execute an agreement selecting the forum in which any legal action would be taken.

2.  We agree with Appellants' argument the trial court erred in finding the Arbitration Agreement was unconscionable.

Although a court may invalidate an arbitration agreement on the defense of unconscionability, it may not invalidate such an agreement "under state laws applicable *only* to arbitration provisions." *Zabinski*, 346 S.C. at 593, 553 S.E.2d at 116.  "In South Carolina, unconscionability is defined as the absence of meaningful

choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Smith v. D.R. Horton, Inc.*, 417 S.C. 42, 49, 790 S.E.2d 1, 4 (2016) (quoting *Simpson*, 373 S.C. at 24-25, 644 S.E.2d at 668). "In analyzing claims of unconscionability of arbitration agreements, . . . [courts should] focus generally on whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker." *One Belle Hall Prop. Owners Ass'n, Inc. v. Trammell Crow Residential Co.*, 418 S.C. 51, 60, 791 S.E.2d 286, 291 (Ct. App. 2016) (quoting *Simpson*, 373 S.C. at 25, 644 S.E.2d at 668).

"Absence of meaningful choice on the part of one party generally speaks to the fundamental fairness of the bargaining process in the contract at issue." *Simpson*, 373 S.C. at 25, 644 S.E.2d at 669. "In determining whether a contract was 'tainted by an absence of meaningful choice,' courts should take into account the nature of the injuries suffered by the plaintiff; whether the plaintiff is a substantial business concern; the relative disparity in the parties' bargaining power; the parties' relative sophistication; whether there is an element of surprise in the inclusion of the challenged clause; and the conspicuousness of the clause." *Id.* (quoting *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 293, 295 (4th Cir. 1989).

We find Arredondo did not lack meaningful choice when she executed the Arbitration Agreement. Even if the Arbitration Agreement was an adhesion contract, "[t]he fact that a contract is one of adhesion does not make it unconscionable." *Lackey v. Green Tree Fin. Corp.*, 330 S.C. 388, 395, 498 S.E.2d 898, 901 (Ct. App. 1998); *see Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 541 n.5, 542 S.E.2d 360, 365 n.5 (2001) (noting "[i]nequality of bargaining power alone will not invalidate an arbitration agreement" (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 183 (3d Cir. 1999))).

We find the Arbitration Agreement was neither a surprise nor inconspicuous. It was a separate contract and clearly labeled. In a dissent, Chief Justice Toal explained the benefits of using a separate contract for an arbitration agreement as follows: "Using a separate contract for arbitration agreements is conducive to greater freedom of choice for the consumer. It also better protects the nursing home from a contention that the arbitration contract is unconscionable." *Coleman v. Mariner Health Care, Inc.*, 407 S.C. 346, 357, 755 S.E.2d 450, 456 (2014) (Toal, C.J., dissenting) (citing *Hayes v. Oakridge Home*, 908 N.E.2d 408, 413 (Ohio 2009) (holding an arbitration agreement that was a free standing document

and its execution "was voluntary and not a condition of [ ] admission" into the nursing home was not unconscionable)).

The record contains no evidence of Arredondo's education, experience, or business acumen to determine her relative sophistication. *See Johnson*, 416 S.C. at 512, 788 S.E.2d at 218 (stating the party opposing arbitration bears the burden of demonstrating that he or she has a valid defense to arbitration).

The Arbitration Agreement described the nature of arbitration and the trial rights a resident was waiving. It further stated the decision by the arbitration panel was final. By signing the Arbitration Agreement, Arredondo acknowledged she had been given the opportunity to ask questions and seek the advice of an attorney, although she did not take advantage of this opportunity. *See Towles v. United HealthCare Corp.*, 338 S.C. 29, 39, 524 S.E.2d 839, 845 (Ct. App. 1999) ("After receiving and signing the Acknowledgment, [a party to an arbitration agreement] cannot legitimately claim [the other party] failed to provide actual notice of the arbitration provisions because the law does not impose a duty to explain a document's contents to an individual when the individual can learn the contents from simply reading the document." (citing *Citizens & S. Nat'l Bank v. Lanford*, 313 S.C. 540, 545, 443 S.E.2d 549, 551 (1994); *Burwell v. S.C. Nat'l Bank*, 288 S.C. 34, 39, 340 S.E.2d 786, 789 (1986)). Thus, the trial court erred in holding Arredondo did not understand the rights she was waiving.

We find the terms of the Arbitration Agreement were not one-sided or oppressive. The Arbitration Agreement stated the purpose of the Agreement was "to avoid costly and time-consuming litigation." It mandated all claims involving a potential monetary amount in excess of $25,000 would be resolved by binding arbitration. This limitation applied to both parties. The Arbitration Agreement authorized the resident to choose whether the dispute would be decided by one or three neutral arbitrators. The members of the arbitration panel were to be chosen by the American Arbitration Association or by mutual agreement of the parties. In addition, the Arbitration Agreement provided for a physician to serve on the arbitration panel if a medical issue may come before the panel.[2]

The parties were to divide the cost of the arbitration proceeding. However, if the resident was not able to pay his or her half of the arbitration costs, Appellants

---

[2] The Arbitration Agreement provides, "Where a medical issue may more likely than not come before the Panel, and the panel is three in number, one member of the Panel shall be a Physician."

would pay the entire amount but would get to choose the number of arbitrators. The Arbitration Agreement did not prohibit a resident from pursuing a claim or complaint with a local, state, or federal agency and did not limit any resident's rights provided by state or federal law.

Arredondo asserts the terms of the Arbitration Agreement were oppressive because it limited discovery. The arbitration panel was to follow the current Commercial Arbitration Rules of the American Arbitration Association. It was to direct the timetable and discovery in all controversies. This court recognized limitations in arbitration do not make an arbitration agreement unenforceable as "[t]he benefits received by arbitration come with certain limitations on discovery." *Lucey v. Meyer*, 401 S.C. 122, 142, 736 S.E.2d 274, 285 (Ct. App. 2012) (noting "'while discovery generally is more limited in arbitration than in litigation, that fact is simply one aspect of the trade-off between the "procedures and opportunity for review of the courtroom [and] the simplicity, informality, and expedition of arbitration" that is inherent in every agreement to arbitrate' and '[b]ecause limited discovery is a consequence of perhaps every agreement to arbitrate, it cannot, standing alone, be a reason to invalidate an arbitration agreement'" (quoting *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 286 (4th Cir. 2007)).

Arredondo also argues the terms were oppressive because the Arbitration Agreement prohibited an award of punitive damages. The supreme court upheld a limitation on liability clause that prohibited incidental, indirect, special, consequential, or punitive damages, finding it was not contrary to public policy and that its enforcement would not be unconscionable. *Maybank v. BB&T Corp.*, 416 S.C. 541, 576, 787 S.E.2d 498, 516 (2016). It explained,

> Under its terms, it does not deprive [the respondent] of all damages arising under the contract but merely limits the type of damages he is entitled to recover. Specifically, [the respondent] is precluded from seeking consequential damages, indirect damages, special damages, or punitive damages in claims arising from his relationships with Appellants; he is still entitled to actual damages. While clauses limiting liability are to be strictly construed, we find no reason to ignore the plain language of the clause based on either public policy or unconscionability grounds.

*Id.*; *contra Simpson*, 373 S.C. at 28-30, 644 S.E.2d at 670-71 (finding an arbitration agreement that prohibited "punitive, exemplary, double, or treble damages (or any other damages which are punitive in nature or effect)" was unenforceable "because it prevents [the plaintiff] from receiving the mandatory statutory remedies to which she may be entitled in her underlying SCUTPA and Dealers Act claims" and noting the provision "goes beyond banning 'punitive' damages generally and specifically prohibits an arbitrator from awarding statutorily required treble or double damages").

Here, the Arbitration Agreement still allowed for awards of equitable relief and economic and non-economic damages. It did not prohibit any mandatory statutory remedies. We find neither the limitations on discovery nor the prohibition of punitive damages made the terms of the Arbitration Agreement oppressive. We hold the Arbitration Agreement was "geared towards achieving an unbiased decision by a neutral decision-maker." *See One Belle Hall Prop. Owners Ass'n, Inc.*, 418 S.C. at 60, 791 S.E.2d at 291 (quoting *Simpson*, 373 S.C. at 25, 644 S.E.2d at 668. Thus, the trial court erred in holding the Arbitration Agreement was unenforceable due to unconscionability.

**CONCLUSION**

We find the Durable General Power of Attorney and the Health Care Power of Attorney granted Arredondo authority to execute the Arbitration Agreement on behalf of her father. In addition, we find the Arbitration Agreement was not unconscionable. Accordingly, we hold the trial court erred in denying Appellants' motion to compel arbitration.[3]

**REVERSED.**

**HUFF, THOMAS, and KONDUROS, JJ., concur.**

---

[3] As we find the above issues dispositive, we need not address Appellants' remaining issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (declining to address remaining issues when prior issue is dispositive).